Opinion issued July 22, 2010


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00253-CR

———————————

Kenneth Ray Green, Appellant

V.

The State of
TExas, Appellee



 



 

On Appeal from the 209th District Court

Harris County, Texas



Trial Court Case No. 1069293

 



 

MEMORANDUM OPINION

          A
jury found appellant, Kenneth Ray Green, guilty of capital murder and the trial
court assessed punishment at confinement for life.  In three points of error, appellant contends
(1) that the trial court erred in admitting letters purportedly written by
appellant that were not properly authenticated and (2) that the evidence was
legally and factually insufficient to prove appellant’s identity as the
perpetrator.  We affirm.

BACKGROUND

          On
Mother’s Day 2006, Sally Banks, the grandmother of the deceased, heard an
argument and gunshots outside her house. 
She later discovered that her grandson, Terrance Banks, had been
shot.  Banks testified that her grandson
drove a white Cadillac.

          Homicide
Detective R. Wedgeworth interviewed a witness, Danielle Shorter, and was
directed to the Coke Street Apartments some 15 miles away.  At that site, Wedgeworth found the
complainant’s white Cadillac, which had been stripped of its rims and tires.  After interviewing Xavier Sauls and Benedict
Onezine, who lived at the apartments, Wedgeworth developed two suspects,
appellant Kenneth Green a/k/a “Killa Pop” and Ryan Mitchell a/k/a “Smoke.”  One of appellant’s fingerprints was
discovered on the wheel well of the stolen vehicle.  Appellant was subsequently arrested.  The eyewitness, Shorter, was unable to
identify him in a line-up. 

          At
trial, appellant’s cousin, Messiah Fritz, testified that on the day of the offense,
appellant and Smoke came by Fritz’s apartment, woke him up, and asked for a car
jack to get some tires off a car. 
Appellant told Fritz that he had “taken care of business” to get the car
and that “he took someone’s life” in the process.  Appellant claimed that he shot the owner of
the car five or six times.

          Appellant
and Smoke then took the rims to Onzine’s apartment and asked if he could leave
them there for a few hours.  Sauls, who
lived at the apartment with Onezine, testified that appellant and Smoke came by
later to pick up the rims, and Sauls heard appellant say that he had killed
someone for those rims.

          At
trial, a forensic expert testified that the complainant was shot six times by
either a .38 or .357 revolver.

AUTHENTICATION

          In
point of error one, appellant contends the trial court erroneously admitted letters
that appellant purportedly wrote to another inmate in the jail.  Specifically, appellant complains that the
letters were not properly authenticated under Tex. R. Evid. 901(a).

Background

          At trial, the State called Sauls, who testified that
appellant, along with Smoke, came to pick up a set of rims from Saul’s aunt’s
apartment.  Sauls testified that he heard
appellant say that “he killed a man for the rims.”  

Sauls also testified that, at the time of appellant’s trial, he, Sauls, was
in jail on a robbery charge.  Sauls
testified that, while in jail before appellant’s trial, a jail trustee brought
Sauls two letters signed by “Killa Pop,” the street name used by appellant.  Sauls did not write the letters and he did
not believe the trustee wrote the letters. 
In the first letter, State’s exhibit 50, “Killa Pop” mentioned that Smoke
was not going to testify and asked Sauls not to testify either.  “If you don’t testify, I walk,” stated “Killa
Pop.”  “Killa Pop” also mentioned that
his trial date was “1-23-09” and that he was also in jail “right down the
hall.”

The second letter, State’s exhibit 51, was actually a draft affidavit
that “Killa Pop” prepared and asked Sauls to sign and have notarized.  The draft affidavit that “Killa Pop” wanted
Sauls to sign stated that police “instructed [Sauls] of what to say and made
agreement not to have [Sauls’s] family kicked out of the Coke Street
Apartments.”  The draft affidavit further
instructed Sauls to aver that he “had no knowledge of this crime and I have
told them that I don’t wish to testify and I’m not going to testify.”

Standard
of Review

          To resolve this issue, we
must determine whether it was an abuse of discretion for the trial judge to
find that sufficient evidence was presented to support a jury finding that
appellant wrote the letters.  Druery v. State, 225 S.W.3d 491, 502
(Tex. Crim. App. 2007).  The trial court
does not abuse its discretion in admitting evidence when he reasonably believes
that a reasonable juror could find that the evidence has been authenticated or
identified.  Id. 
We affirm the trial court’s decision as long as its ruling is within the
zone of reasonable disagreement.  Id. 
The authentication requirement is satisfied by evidence sufficient to
support a finding that the matter in question is what its proponent
claims.  Tex. R. Evid. 901(a).

Law
and Analysis

          The authentication
requirement can be satisfied by showing “Distinctive
characteristics and the like. 
Appearance, contents, substance, internal patterns, or other distinctive
characteristics, taken in conjunction with circumstances.”  Tex. R. Evid. 901(a)(4).  In Druery, the trial court found a similar
jailhouse letter authenticated by evidence showing that (1) the defendant was
in a position to have mailed the letter from the jail,  (2) the writer identified himself by the
defendant’s nickname, (3) the letter was sent to the defendant’s cousin, a
witness in the case, (4) the content of the letter identified five witnesses
who were going to testify against the defendant, (5) the letter included the
cover pages of the witnesses interviews with police, implying that the writer
had access to those interviews, (6) the letter discussed facts know to the
defendant about his case, (7) the letter stated that the return address is
false because of an attempt to keep jail staff from reading the letter, and (8)
appellant’s fingerprints were on the letter. 
Id. at  503.  The court also noted that there was no
evidence of tampering or any other fraud regarding the letter. Id.

            Appellant argues that Druery is distinguishable because in that case the defendant’s
fingerprints were on the letter, and in this case, there are no
fingerprints.  While it is true that one
of the factors the Druery court
considered was the presence of the defendant’s fingerprints on the letter, we
consider the circumstances as a whole to determine whether a rational jury
could have concluded that appellant wrote the letters.

            First, we note that appellant was in
a position to have the letters delivered by a trustee to Sauls.  Appellant and Sauls were both confined to the
Harris County Jail at the same time. 
Second, both letters are signed by “Killer Pop,” a name that multiple
witnesses identified as appellant’s street name.  Third, the letter is written to Sauls, a
witness to the charged offense.  Sauls
provided police with evidence linking appellant to the stolen rims as well as a
statement that appellant had “killed someone for those rims.”  Fourth, the letter referenced Smoke, another
witness in the case, and told Sauls that Smoke was not going to testify against
appellant.  Fifth, the “affidavit”
referred to Sauls’s family at the “Coke Apartments,” which is where the stolen
vehicle was recovered, thus indicating a knowledge of the facts of the case.  Sixth, the letter mentioned appellant’s cell
location in the Harris County Jail.  Seventh,
the letter referenced appellant’s next court date.

            Nevertheless, appellant argues that
Sauls possessed the same information and could have written the letters himself
in order to obtain leniency in his robbery case.  The court of criminal appeals considered and
rejected a similar argument in Druery.  Id. at 503 (“So while Druery is correct
that a possibility does exist that another person knew and had access to all of
this information . . .  it was reasonable
for the trial judge to believe that a reasonable juror could find that the
exhibit was what the State purported it to be—a letter written by
Druery.”).  Similarly, in this case,
based on the facts and circumstances discussed above, the jury could have
reasonably concluded that appellant wrote the letters admitted as State’s
Exhibits 50 and 51.  Also, in this case,
as in the Druery case, there is no
evidence of tampering or fraud associated with the letters.  As such, the trial court did not abuse its
discretion in admitting the letters.

            We overrule point of error one.

SUFFICIENCY OF THE EVIDENCE

          In
points of error two and three, appellant contends the evidence is legally and
factually insufficient to show that he murdered the complainant during the
course of committing a robbery. 

Standards
of Review

We review the legal sufficiency of the evidence by
considering all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). In doing so, we give
deference to the responsibility of the fact-finder to fairly resolve conflicts
in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to “ensure that the evidence
presented actually supports a conclusion that the defendant committed” the
criminal offense of which he is accused. Id. 

In a factual sufficiency review, we view all the evidence in
a neutral light and set aside the verdict if the proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, i.e., that the
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and
preponderance of the evidence. Watson v. State, 204 S .W.3d 404, 414–15
(Tex. Crim. App. 2006). We note that a jury is in the best position to evaluate
the credibility of witnesses, and we afford due deference to the jury’s
determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).


A
person commits the offense of murder when he intentionally or knowingly causes
the death of an individual.  Tex. Penal Code Ann. § 19.02(b)(1)
(Vernon 2003).  A murder is a capital
murder if intentionally committed in the course of committing or attempting to
commit a robbery.  Tex. Penal Code Ann. § 19.03(a)(2)
(Vernon Supp. 2009).

Legal Sufficiency

In
support of his legal sufficiency challenge, appellant asserts that “there was
no proof that appellant was involved in the shooting,” and that “[n]o proof was
offered by the State that appellant alone or with another planned or formed the
intent prior to or concurrent with the murder.” 
Appellant points out that no eyewitnesses testified at trial and the
only eyewitness to the crime was unable to identify him in a line-up.  He also questions the credibility of Sauls
and Fritz.



Viewing all of the evidence in the light most favorable to
the verdict, we note that the complainant’s vehicle was recovered from an
apartment complex about 15 miles away from the shooting.  In fact, the car was found with its tires and
rims removed in front of a building at the Coke Street Apartments where
appellant’s cousin, Fritz, lived. 
Appellant’s fingerprints were found on the car near the wheel well.  The complainant was shot with either a .38 or
.357 Magnum revolver.  Appellant was seen
carrying a .357 Magnum.  An eyewitness,
Shorter, described the shooter, and her description matched appellant’s
physical appearance.  Appellant’s cousin,
Fritz, saw him stripping the tires off of a vehicle that matched the victim’s
vehicle.  Appellant bragged to Fritz that
he “took someone’s life” to obtain the vehicle and that he shot its owner five
or six times.  Forensic evidence showed
that the complainant was shot six times. 
Onezine testified that appellant asked him if he could store the rims
and tires in Onezine’s apartment for a few hours.  Sauls testified that appellant came by the
apartment where Sauls was living with his Aunt Mary and Onezine to retrieve a
set of time and rims that were there. 
While appellant was putting the rims in a car, Sauls heard appellant
tell someone else that he had killed a man for those rims.  There was also evidence that appellant tried
to persuade Sauls not to testify.   

Viewing the evidence in the light most favorable to the
verdict, a reasonable trier of fact could have found beyond a reasonable doubt
that appellant murdered the complainant while stealing the rims from the
complainant’s car. Accordingly, we hold that the evidence is legally sufficient
to support appellant’s conviction.

Factual Sufficiency

In
support of his factual sufficiency challenge, appellant argues that Sauls and
Fritz are both lacking in credibility and stood to gain in their own criminal
cases by testifying for the State. 
Appellant also argues that  he
“was only circumstantially tied to the offense based on the statements [by
Sauls and Fritz] as well as the fact that he was present and attempted to sell
the rims and tires from the vehicle stolen in this offense[.]”   We
note that circumstantial evidence is probative of a defendant’s guilt and is
sufficient by itself to establish guilt. Guevara v. State, 152 S.W.3d 45,
49 (Tex. Crim. App. 2004).  We also note
that issues of credibility are resolved by the jury.  Marshall,
210 S.W.3d at 625.  A jury’s decision is
not manifestly unjust merely because the jury resolved the issue of witness
credibility if favor of the State.  See Westbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000).

We
conclude that the verdict is not “clearly wrong and manifestly unjust” and the proof
of guilt is not against the great weight and preponderance of the evidence. See
Watson, 204 S.W.3d at 414-15. Accordingly, we hold that the evidence is
factually sufficient to support appellant’s conviction.



We overrule appellant’s second and
third points of error.

CONCLUSION

We affirm the judgment of the trial
court.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.

Do
not publish.   Tex. R. App. P. 47.2(b).